IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,           )
                                          )        2:07-cv-02104-GEB-DAD
                Plaintiff,                )
                                          )
          v.                              )        ORDER*
                                          )
JOSE GUADALUPE PRADO, and MARIA           )
ELENA PRADO, individually and             )
d.b.a. RESTAURANTE DEL PRADO,             )
                                          )
                Defendants.               )
                                          )

          On January 22, 2008, Defendants Jose Guadalupe Prado and

Maria Elena Prado ("Defendants") moved to set aside the Default

entered against them on the Complaint by J & J Sports Productions,

Inc. ("Plaintiff").  (Mot., Dkt. No. 9.)  Plaintiff opposes the

motion.  For the reasons stated, the motion is granted.

                              BACKGROUND

          Plaintiff owns the exclusive television broadcast

distribution rights to the *Diego Corrales v. Jose Luis Castillo* World

Light Heavyweight Championship Fight Program of October 8, 2005 ("the

Fight").  (Compl. ¶ 10.)  Plaintiff entered into sublicensing

---

          *    This matter was determined to be suitable for decision without
oral argument.  L.R. 78-230(h).

agreements with commercial entities throughout the United States wherein it granted limited public exhibition rights for the Fight. (Id. ¶ 11.)  Defendants exhibited a broadcast of the Fight at their restaurant on October 8, 2005. (Opp'n at 3:25-26.)  Defendants' son, Javier Prado ("Javier") declares he ordered the Fight through pay-per-view under a Direct TV account in his name for the personal enjoyment of himself, his family members and acquaintances.  (Javier Prado Decl. at 1:22-28.)  Javier paid for the Fight on his next Direct TV bill. (Id. at 1:26-28, 2:1-3.)  Jason Garner, an investigator for Plaintiff, witnessed the exhibition of the Fight at Defendants' restaurant. (Opp'n at 3:17-21.)

        Plaintiff filed a Complaint on October 5, 2007 alleging that Defendants violated the Communications Act of 1934, 47 U.S.C. § 605, et. seq. ("§ 605"), and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, et. seq. ("§ 553"), when they exhibited a broadcast of a pay-per-view fight program at their restaurant. (Compl. ¶¶ 1, 13, 19.)  Plaintiff's Complaint also includes a claim for conversion.  (Id. ¶ 24.)  Defendants were served on November 29, 2007.  (Req. for Entry of Default, Dkt. no. 7, Attach. No. 2.)  Defendants did not timely file an Answer.  On January 8, 2008, following Plaintiff's request, the Clerk of the Court entered default against Defendants. (Dkt. No. 8.)

                            LEGAL STANDARD

        "The court may set aside an entry of default for good cause . . . ."  Fed. R. Civ. P. 55(c).  To satisfy the "good cause" standard the movant must show: 1) excusable neglect; 2) a meritorious defense; and 3) that setting aside the default will not unfairly prejudice the other party.  Franchise Holding II, LLC v. Huntington Rests. Group,

Inc. 375 F.3d 922, 925-26 (9th Cir. 2004); Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir. 2000).  Where the movant seeks timely relief from a default "and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits.'"  Mendoza v. Wight Vineyard Mgmt., 783 F.2d 941, 945-46 (9th Cir. 1986) (quoting Schwab v. Bullock's Inc., 508 F.2d 353, 355 (9th Cir. 1974)).

DISCUSSION

I.  Excusable Neglect

        Defendants argue their failure to respond to the Complaint constitutes excusable neglect because they are "totally ignorant of the legal system, cannot speak or read English, and had no idea what they had to do to protect themselves."  (Mot. at 4:13-14.)  Defendants contend that when they received the summons and complaint they "could not read or understand what had been served on them" because Defendant Jose Guadalupe Prado "can only speak a few English words and cannot read English" and Defendant Maria Elena Prado "cannot speak or read any English."  (Id. at 2:6; 1:19-20.)  Defendants' son, Javier, read the summons but then called the Eastern District Court and "was told that the hearing [for this action] had been continued to March 3, 2008."  (Id. at 2:10-12.)  March 3, 2008 was the date of the Status (Pretrial Scheduling) Conference.  From this conversation, Defendants thought they could respond to the Complaint by appearing in Court on March 3, 2008.  (Id. at 2:13-14.)  Defendants consulted with an attorney on January, 8, 2008.  (Id. at 2:21-22.)  At that time, they learned that a default had been entered against them.  (Id.) Plaintiff rejoins that Defendants are "neither ignorant of the legal

system, nor unsophisticated in any way" and "knew fully the lawsuit
was coming [because of] the extensive number of demand letters served
upon them by Plaintiff's counsel."  (Opp'n at 5:20-21; 6:10-12.)

> [T]he determination [of excusable neglect] is at
> bottom an equitable one, taking account of all
> relevant circumstances surrounding the omission
> [including] the length of the delay and its
> potential impact on judicial proceedings, the
> reason for the delay, including whether it was
> within the reasonable control of the movant, and
> whether the movant acted in good faith.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S.
380, 395 (1993).  No excusable neglect exists when the movant's
actions leading to the default were culpable; "[i]n this context
culpable conduct means actions taken willfully or in bad faith."
Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123-24 (3d Cir.
1983).

Since Defendants cannot read or speak English, they were
unable to read and understand the demand letters and the summons sent
to them.  When Defendants asked their son to interpret the papers
served on them, he contacted the Court Clerk and mistakenly thought
his parents were required to appear in court on March 3, 2008.
Contrary to Plaintiff's argument that "Defendants clearly made a
tactical decision not to properly respond to Plaintiff's complaint,"
Defendants did make an effort to find out what they should do to
respond.  There is no evidence that Defendants' failure to respond was
in bad faith.  Accordingly, Defendants have established that their
failure to file an Answer with the Court was due to excusable neglect.
See Dalminter, Inc. v. Jessie Edwards, Inc., 27 F.R.D. 491 (S.D. Tex.
1961) (holding excusable neglect existed when defendant was a layman
not familiar with the Federal Rules and therefore could not have known
that an Answer was required to be filed with the court).

II.  Meritorious Defense

Defendants argue that they have a meritorious defense in this action because there are factual disputes as to "what [D]efendants did that was wrong, whether they were willful, whether they paid for the televised fight through DirectTV, [and] whether they obtained any financial benefit from watching the fight."  (Mot. at 5:22-24.)  Defendants also argue "[e]ither there was an unlawful interference with a radio transmission which is covered under section 605 or of a cable transmission which is covered under section 553." (Id. at 5:18-20.)  Plaintiff argues it would be pointless to set aside the default because the Defendants "plainly admitted" they exhibited the Fight through "paying a residential programming provider (DirectTv), and thereafter broadcasting the [Fight] at their commercial establishment."  (Opp'n at 9:13-18.)

"[A] party seeking to set aside a default need not prove his defense by a preponderance of the evidence.  Rather, that party only carries the burden of producing competent evidence that establishes a factual or legal basis for the tendered defense." Tri-Cont'l Leasing Corp., Inc. v. Zimmerman, 485 F. Supp. 495, 497 (N.D. Cal. 1980) (citing Cent. Operating Co. v. Util. Workers Union of Am., 491 F.2d 245, 252 n.8 (4th Cir. 1974)).  "If the complaint contains contradictory allegations or omits allegations essential to recovery, a default judgment cannot stand."  Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial, § 6:48, (The Rutter Group 2007) (citing Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200 (5th Cir. 1975) (holding complaint was incapable of supporting default judgment when a letter attached to complaint contradicted the allegations)).  In a motion to set aside a default,

any doubts as to whether Defendants have a meritorious defense are to be resolved in their favor. Quaker Valley Sch. Dist. v. Employers Mut. Liab. Ins. Co. of Wis., 96 F.R.D. 423 (D.C. Pa. 1983).

Plaintiff's first claim is for violation of § 605 of the Communications Act. Section 605 prohibits unauthorized interception of "any radio communication." 47 U.S.C. § 605(a). "The term 'radio' includes satellite transmissions." Kingvision Pay Per View, Ltd., v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998). Plaintiff's second claim is for violation of § 553 of the Cable & Television Consumer Protection Act. Section 552 applies to "any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). Since § 605 covers satellite communications and § 553 covers cable, guilt under one statute is a defense to the other. See Kingvision, 1 F. Supp. 2d at 1484 (holding defendant "can only be liable under § 605 and not § 553"). Therefore, Defendants have satisfied this requirement.

III.  Unfair Prejudice

Defendants argue that granting the motion will not prejudice Plaintiff because "the case is only about three months old" and "[a]llowing [D]efendants relief to file the proposed [A]nswer would have little or no[] impact on the judicial proceedings . . . ." (Mot. at 3:26-28, 4:6-7.) Plaintiff rejoins that setting aside the default "would be wholly inequitable and prejudicial to the Plaintiff at this juncture." (Opp'n at 9:1-2.)

"The standard [for unfair prejudice] is whether [Plaintiff's] ability to pursue [its] claim will be hindered." Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984). Defendants filed their motion to set aside the default ten days after it was entered, and the

1 | delay involved with Defendants' motion has not interfered with the
2 | scheduling of this action under Rule 16 of the Federal Rules of Civil
3 | Procedure; a Status Order issued on February 25, 2008 fully schedules
4 | this action.  Accordingly, Plaintiff has not shown it would be
5 | unfairly prejudiced by an order setting aside the Default.

SUMMARY

7 |      For the reasons stated, Defendants' motion is granted.  The
8 | January 8, 2008 entry of Default against Defendants is set aside.
9 |      IT IS SO ORDERED.

Dated:  March 26, 2008

GARLAND E. BURRELL, JR.
United States District Judge